This matter came before me on the return of a writ of habeascorpus.
In May, 1942, the petitioner, Wilbur John Wright, was sentenced to an indefinite term of imprisonment in the New Jersey reformatory in Rahway following his conviction on a charge of larceny of an automobile.
While in custody, the petitioner registered with Local Board No. 5 in Montclair, New Jersey, in accordance with the Selective Service Laws of the United States. On March 3d 1943, the petitioner was released from the reformatory. The entry in the minutes of the board of managers of that institution, as to petitioner's release, under date of March 15th, 1943, reads as follows: "Released for induction No. 17725, Wilbur Wright, March 3, 1943." The petitioner was discharged from the United States Army on April 27th, 1946, following imposition of a general court martial for violation of the 64th Article of War (refusal to obey command of commanding *Page 517 
officer) and was returned to the reformatory as a parole violator. The following entry is set forth in the minutes of the board of managers relative to the return of the petitioner to the reformatory: "Wilbur Wright, N.J.R. 17725. Moved and seconded that the release of Wilbur Wright, N.J.R. 17725, be revoked as of May 20, 1946, in accordance with Sec. 30:4-111 of the Revised Statutes and in accordance with the recommendation of the Superintendent. Carried."
Petitioner alleges that on March 3d 1943, he was unconditionally released from custody by the board of managers of said reformatory in order to be inducted into the United States Army and presently is being held in custody in said institution unlawfully and illegally. In the alternative, petitioner denies in the traverse to the return of the writ, that if in fact he was paroled, he violated such parole while a member of the United States Army. He further alleges that his reincarceration was not carried out in accordance with the statute, R.S. 30:4-111, in that the revocation of his parole (if in fact he was paroled) was not effected by an order in writing signed by the chairman and attested by the secretary of the board.
The respondents contend that petitioner was released on parole and that supervision of the parole was suspended for the duration of his military service pursuant to an agreement entered into between the reformatory authorities and the State Selective Service Bureau of the State of New Jersey. Respondents assert that this agreement is based on paragraph 13b of Army Regulations 615-500, subparagraph (3) (b) 3 (e) which is as follows:
"A registrant who is currently confined in a penal institution for a period in excess of 1 year as a result of having been convicted of a crime other than those mentioned in (a) above is morally acceptable for service in the Army only when —
 * * * * * * *
"The authority which is empowered to grant the registrant parole, pardon, or conditional release states that —
"If the registrant is accepted, custody of civil authority has been terminated effective upon his entering the armed forces, or has been suspended during the period of his military service."
Respondents claim that following petitioner's dishonorable discharge from the United States Army, he was returned to *Page 518 
the reformatory as a parole violator inasmuch as unsatisfactory military duty was regarded as a violation of parole.
It should be understood that the determination of this case prescinds from any consideration the powers of the Court of Pardons which are not in question here.
Petitioner bases his contention of unconditional release upon the following:
1. The entry in the minutes of March 15th, 1943, heretofore set forth.
2. Two letters; one, a communication from the local draft board addressed to William E. Kulp, superintendent, New Jersey Reformatory, advising the addressee that the petitioner had been classified in Class 1-A; that he would be called up for induction; that according to information received by said draft board, the petitioner would be released from custody in order to report for induction without being placed on parole. The second letter is in reply to the foregoing communication and was written by Lieutenant W.E. Kulp, superintendent. It merely states that the petitioner "has been available for induction since November, 1942."
3. Certain statements allegedly made by the superintendent of the reformatory to the petitioner and to his father to the effect that if he were accepted for military service his release would be unconditional, which statements were denied by the superintendent at the hearing.
I am unable to perceive how the petitioner can expect to prevail on the basis of the evidence produced. The statutes relative to the discharge of a person sentenced as this petitioner was are R.S. 30:4-113 and R.S. 30:4-148. Both of these statutes require that action be taken by the board of managers of the correctional institution before a person in custody may be discharged. The petitioner has not shown that such action was taken with respect to him. The respondents, however, have conclusively substantiated their contention that the petitioner was released on parole, supervision of which was suspended for the duration of petitioner's military service in accordance with the agreement entered into between them and the State Selective Service Bureau.
The correspondence between the Selective Service Board and the superintendent of the reformatory is in no way dispositive *Page 519 
of petitioner's contention of unconditional release from the correctional institution. Whether or not petitioner was discharged is a matter which must clearly appear from the records of the board of managers of the institution to which he was confined and not those of the draft board. Further, the superintendent's reply letter is not responsive to the understanding set forth in the letter from the Selective Service Board. Even if it were responsive, it could not bind the board of managers of the institution. The superintendent alone is not empowered to discharge a person in his custody. Discharge from custody, according to the statutes, cited above, is contingent upon action of the board of managers of the correctional institution.
This view that the petitioner and others in his status were released on parole for the duration of military service was shared by the legislature. See P.L. 1946 ch. 209; R.S. 2:197A-1et seq.
The petitioner's denial that he violated his parole by any act or manner while a member of the United States Army or at any other time is without merit. See R.S. 30:4-111 which empowers the board of managers in their judgment to determine whether or not "a paroled prisoner has violated the terms, conditions and limitations of his parole, c." It was shown at the hearing that unsatisfactory military service constitutes a violation of parole.
Petitioner's contention that the revocation of his parole was not according to the statute (R.S. 30:4-111) in that there was no order in writing signed by the chairman and attested by the secretary of the board is likewise without merit. At the hearing it was shown that the superintendent of the reformatory had in his possession a change of status form which contained the entry set forth in the minutes of the board of managers with reference to petitioner's return to the reformatory. This form was signed by the president and secretary of the board. The statute does not require the order revoking parole to be in any particular form.
I have concluded that the commitment by virtue of which the petitioner was originally imprisoned has not lost its efficacy. Accordingly the petitioner will be remanded into custody in accordance with its terms. *Page 520